Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        vs.<br><br>NOPENON DENNIS SHINE,<br><br>                    Defendant. | Case No. 3:06-cr-0041-02-RRB<br><br>DEFENDANT SHINE'S REPLY<br>TO GOVERNMENT'S PARTIAL<br>OPPOSITION TO DISCOVERY<br>REQUEST |

Defendant, Nopenon Dennis Shine, by and through counsel Michael Dieni,

Assistant Federal Defender, submits his reply to the government's partial opposition to

discovery request.  The issues are addressed in the order presented by the government's

opposition.

        1.     *Rough notes of statements made by a defendant to a law*
             *enforcement officer are immediately discoverable pursuant to Criminal*
             *Rule 16(a)(1)(B)(ii).*

The government confuses statements made by a defendant, which are

covered by Criminal Rule 16, with statements made by any other witness, which fall within

the rules set forth in the Jencks Act, 18 U.S.C. § 3500 *et seq.* Different rules apply to each.

In relevant part Rule 16(A)(1)(B) dictates:

> Upon a defendant's request, the government must disclose to the defendant and make available for inspection, copying, or photographing . . . (ii) *the portion of any written record* containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by a person the defendant knew was a government agent . . . . (Italics added.)

The written notes qualify as the portion of "any written record." The key part of the phrase is the word "any." The government does not get to pick and chose which written record to produce. The government must produce any written record.

Two separate district courts have recently agreed. *United States v. Ferguson*, WL 196668 (D. Conn. 2007); *United States v. Stein*, 424 F. Supp. 2d 720 (S.D.N.Y. 2006). In both of these decisions, the court disavowed pre-1991 authority by recognizing that the law had changed. Prior discussions of the government's duty focused upon Rule 16(a)(1) A. The Rule change in 1991 with the addition of section (a)(1)(B)(ii), which adds the language requiring production of any written record.

Likewise, the Sixth Circuit has recognized that Rule 16(a)(1)(B)(ii) is more specific than Rule 16(a)(1)(A), and includes the production of rough notes. *United States v. Clark*, 385 F.3d 609, 619 (6th Cir. 2004):

> This rule imposes a more specific disclosure obligation than Rule 16(a)(1)(A), and [Interviewing] Agent Poff's notes, by definition, constitute a portion of a written record containing the substance of Defendant's interview. Accordingly, the government violated Rule 16 by failing to turn over Agent Poff's rough notes upon Defendant's request.

None of the authority cited by the government discusses Rule 16(a)(1)(B)(ii).[1] Nor has the government offered any authority to contradict the clear import of Rule 16(a)(1)(B)(ii) as interpreted by the *Stein*, *Ferguson*, and *Clark* courts discussed above.

In their brief, the government has asserted that they reserve the right to use Mr. Shine's statements to police at trial. Rule 16 is clear. Mr. Shine is entitled to the notes the officers made regarding his statements to them. Mr. Shine rejects the proffer that the government has made that the government has accurately reduced Mr. Shine's statements in memoranda.

The rough notes are particularly important for review of the second statement made on or about May 24, 2006. The oral statement was made in the presence of approximately eight officers, several of whom were taking notes. The government did not reduce the statement to written summary until more than six months later and finally produced it at the end of December 2006, more than seven months after the statement was made. The government's summary is signed by one agent, although many were present and taking notes. It is a creation that will likely be challenged in court, not only for accuracy, but also for admissibility. Review of the notes will be crucial to assisting a trier of fact (and Mr. Shine) to reconstruct which parts of the summary have support in real time recording versus officer memory.

---

[1]       *United States v. Brown*, 303 F.3d 582, 590 (5th Cir. 2002) (limited to a discussion of 16(a)(1)(A)); *United States v. Alvarez*, 86 F.3d 901, (9th Cir. 1996) (discussion of discoverability of Jencks Act notes made by surveillance officer); *United States v. Griffin*, 659 F.2d 932, 941 (9th Cir. 1981) (pre-1991 case reserves question of sanctions against government for destroying rough notes of defendant's interview where government may not use defendant's statements in court at trial).

Finally, the government's discussion of *Jencks* does accurately acknowledge their duty to preserve all interview notes of any witness for the purpose of potential *Brady* material. *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996) (officers' rough notes that contain discrepancies between other witness statement materials favorable to defendant and should be disclosed).

The government has declared that they will produce *Jencks* material two weeks before trial. Notes that contain discrepancies among the various witness statements that are either *Brady* material or form a basis for prior inconsistent statement impeachment should be disclosed no later than at that time, as well. (*See* below re *Brady*.)

    2.    *In a case as complex as Mr. Shine's, the government's duty to provide Brady/Giglio evidence must be based solely upon the question of whether the evidence is "favorable to the accused on the issue of guilt or punishment."*

Repeatedly, the government states they will comply with *Brady* and *Giglio*, but then the government offers an interpretation of *Brady* that will effectively eliminate any real duty.

The *Brady* and *Giglio* holdings establish an affirmative duty upon the prosecution to provide evidence to the defendant that is favorable to the defendant. In *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court declared the rule "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87, 83 S. Ct. at 1196. Over the years, the Court has elaborated upon the rule. The obligation of disclosure now encompasses not only exculpatory evidence, but also

evidence that might be valuable in impeaching government witnesses. *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 766, 31 L. Ed. 2d 104 (1972).

In *Bagley*, the court expanded *Brady* and *Giglio* by holding that the duty exists even if the defendant fails to specifically anticipate and request *Brady* or *Giglio* evidence. *United States v. Bagley*, 473 U.S. 667, 676, 105 S. Ct. 3375, 3380, 87 L. Ed. 2d 481 (1985).

Finally, in *Kyles V. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), the Court made clear that the prosecutor could not take shelter in ignorance of the activities of police officers – the prosecutor had an affirmative duty to find out if the officers possessed *Brady/Giglio* material and turn it over to the defendant.

The Court in *Bagley* went beyond simple materiality as a basis for reversal on the basis of a *Brady* violation. The issue presented was the "standard of materiality" for a *Brady* violation. In summary, the Court ruled that for a Due Process *Brady* violation to have occurred, the government must have failed to disclose "material" evidence, and a "material" violation is one that causes a

> reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.

The government's brief pulls quotes and snippets of quotes from the *Bagley* decision, and others, willy nilly, and ignores the import of the phrases "the result of the proceeding" and "undermine confidence in the outcome." The *Bagley* Court rejected a test that required the defendant to prove that the withheld evidence would have produced an acquittal or a different verdict.

5

In *Kyles v. Whitley*, the Court clarified what is meant by "outcome." It does not mean verdict. It means the trial proceeding itself. Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.* (*quoting Kyles v. Whitley*, 514 U.S. 419, 433-34, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995)). "'*[T]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" Id.* (*quoting Kyles*, 514 U.S. at 433-34, 115 S. Ct. 1555) (emphasis added).

The problem created by the *Bagley* and *Kyles* decisions is how to use a backward looking test prospectively. That is, how to know ahead of the trial whether evidence that is obviously favorable to Mr. Shine on the issue of guilt or innocence or punishment will meet the materiality test during a retrospective look at the trial. The answer is simple. There is no way to know. The *Bagley* and *Kyles* materiality determinations can only truly be made after trial. This is particularly true in Mr. Shine's case.

The *Shine* case is sufficiently complex that the government should not be allowed to withhold any evidence favorable to the accused on the assumption that the evidence will have no affect on the fairness of the trial. Paragraphs 16, 16(a)(b)(c)(d)(e) of the second superceding indictment make this a murder case.

Based upon discovery to date, the murder allegation in this case has no body, no blood, no weapon, and no admissions by Mr. Shine that have been produced in

discovery.  It is believed that Mr. Cody had many enemies, and substantial dealings outside the United States.  On these facts, numerous potential defenses are available to a presumptively innocent Mr. Shine:

1.    Mr. Cody is alive and living elsewhere.

2.    Mr. Cody had many enemies and he might have been murdered by someone else not part of the Ranes drug conspiracy.

3.    Mr. Cody might have been murdered by someone else within the Ranes drug conspiracy unbeknownst to Mr. Shine.

4.    Mr. Cody might have been murdered by someone within the drug conspiracy for reasons unrelated to the drug conspiracy.

5.    Mr. Cody might have died under circumstances not amounting to murder.

There are numerous additional variations to this list of defenses.  The government presumably has only one theory.  Evidence that potentially contradicts or casts doubt on that theory could fall into any of the above categories.  The failure of the government to disclose that evidence will have an effect on how Mr. Shine chooses at trial to approach witnesses and ultimately how he chooses to defend the case.  Under those circumstances, the failure of the government to disclose evidence favorable to the defendant will inevitably undermine confidence in the trial process and the manner in which the defendant chooses to defend the case.

Given this plethora of potential defenses, the safest and only meaningful order this court can take is to order the government to produce the information requested by Mr. Shine (and Ranes).  If the government errs and mistakenly fails to do so, *Bagley* and *Kyles* may rescue the government from a reversal.  But the government proceeds at its own peril by intentionally doing so.

7

This trial is estimated to take two to four weeks. There will be experts and numerous witnesses.  The stakes are high.  The court should not accept the government's implied invitation to play Russian roulette with favorable information on the hope that a retrospective look at the evidence and the trial will render the evidence insufficiently material under *Bagley* and *Kyles*.

The Ninth Circuit has published numerous cases describing the kind of information that must be disclosed pursuant to *Brady* and *Giglio* on facts sufficient, in the Ninth Circuit's view, to undermine confidence in the fairness of the proceedings.

1.  *Horton v. Mayle*, 408 F.3d 570 (9th Cir. 2005) (a reversal for failing to disclose evidence regarding benefits to informant, including money and immunity).

2.  *Gantt v. Roe*, 389 F.3d 908 (9th Cir. 2004) (court reverses murder conviction where prosecutor failed to disclose full extent of police investigation regarding a matchbook found in defendant's pocket that police superficially connected to murdered victim; further investigation not disclosed to defendant failed to show connection between matchbook and victim).

3.  *Carriger v. Stewart*, 132 F.3d 463, 479 (9th Cir.1997) (*en banc*) (court reverses murder conviction where government withheld information about testifying witness, including prior bad acts showing that the witness had acted violently, psychiatric opinions regarding the witness's credibility, prior instances in other investigations where the witness had been untruthful with police).

4.  *Benn v. Lambert*, 283 F.3d 1040 (9th Cir. 2002) (murder conviction reversed; state court determination that prosecution's withholding exculpatory evidence regarding accidental origin of fire was not material *Brady* violation constituted unreasonable application of clearly established Supreme Court precedent, warranting federal habeas relief, where evidence undermined prosecution's theory that murder was motivated by arson-insurance fraud scheme and its main support for the aggravating factor of common scheme or plan, as well as its contention that the killings were premeditated, and prosecution misled defendant by disclosing portion of experts' findings that, when

read alone, would lead to conclusion directly opposite to one they reached).

5.    *Silva v. Woodford*, 279 F.3d 825 (9th Cir. 2002) (remand in murder case, in part, to determine whether prosecution failed to disclose evidence that doubts existed regarding mental health of government witness, and that a deal had been made with witness' attorney that would forestall psychiatric evaluation until after defendant's trial).

6.    *United States v. Brumel-Alvarez*, 991 F.2d 1452 (9th Cir.1993) (the government's withholding of a memorandum highly critical of the role and integrity of a key government informant during the course of an undercover drug investigation violated the defendants' due process rights under *Brady*).

7.    *United States v. Steinberg*, 99 F.3d 1486, 1491-92 (9th Cir. 1996) (finding *Brady* violation where government failed to disclose impeachment information regarding criminal activity of key confidential informant).

8.    *United States v. Mejia-Mesa*, 153 F.3d 925 (9th Cir. 1998) (District court had abused its discretion in denying an evidentiary hearing on a habeas petitioner's *Brady* claim. The petitioner, who was convicted of importing cocaine on a vessel into the country, contended that government withheld the deck log of a vessel that would demonstrate that the vessel was outside of U.S. waters on the date of the offenses.).

9.    *United States v. Shaffer*, 789 F.2d 682 (9th Cir. 1986) (*Brady* violation where government failed to disclose informant's involvement and benefits from other cases).

At a minimum, based upon the above sequence of Ninth Circuit cases, the following can be observed. Evidence known to the government from its investigation favorable to the defendant on the issue of guilt or innocence simply must be disclosed. (*Benn v. Lambert*, *Gantt v. Roe*) Evidence that the government has provided benefits to a witness must be disclosed. (*Horton v. Mayle*) Evidence that a government witness has been untrustworthy during the investigation must be disclosed. (*Brumel-Alvarez*) Evidence

that a government witness has mental health problems must be disclosed. (*Silva v. Woodford; Carriger v. Stewart*) Evidence that the witness has engaged in criminal activity known to the government must be disclosed. (*Carriger v. Stewart*)

      3.    *Timing of disclosure*.

      The government takes the position that the government will produce *Brady* material as soon as reasonably practicable. Pl. Br. at 8. The government's concession is well founded and should continue to be the order of this court.

      As the government implicitly seems to accept, Mr. Shine has a due process right to prepare his case. Failure to provide *Brady* material in a timely manner will prejudice Mr. Shine's ability to make beneficial use of the material at trial.

      As pointed out in *United States v. Pollack*, 534 F.2d 964, 973 (D.C. Cir. 1976), *cert. denied*, 429 U.S. 924 (1976):

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in preparation and presentation of its case, even if satisfaction of this criterion requires pretrial disclosure.

*United States v. Morrow*, 412 F. Supp. 2d 146, 158 ( D.D.C. 2006).

      The government has taken the position that *Jencks* and *Giglio* material will be disclosed two weeks before trial. Depending upon the volume of material, this position seems facially supported by applicable law. If the volume of material is huge, or requires Mr. Shine to find or subpoena witnesses outside of Alaska or outside of the United States, the timing of this disclosure could draw a need to continue the trial.

To the extent the *Giglio* material is more than mere bias or impeachment, but otherwise qualifies as *Brady*, the material should be produced as soon as practicable. The following hypothetical might occur:

> In government witness Z's first interview, Z told police that he knew that Mr. Cody was alive and had fled the country to Ukraine to escape danger. After being indicted as part of the drug conspiracy, and seeking a deal to cut his exposure to jail time, witness A now says that Mr. Shine killed Cody.

The first interview is *Brady*, because, if true, it makes Mr. Shine innocent. The first interview is also *Giglio*, because it impeaches the witness and sets up the argument that the witness now has a motive to lie to curry favor with the government and to save himself.

Under these circumstances, the *Brady* material should be produced as soon as possible. Investigating any details of such a statement by traveling to Ukraine cannot be done two weeks before trial. It would be impossible to make effective use of the statement on such short time before trial.

    4.    *Specific Requests.*

Though operating under an incorrect view of what *Brady* and *Giglio* mean, the government generally non-opposes most of Mr. Shine's (and Mr. Ranes') requests. Without waiving any already stated request, Mr. Shine adds the following points and authority.

    *Shine Request No. 7*:

The government takes the position that the government need not produce evidence that government witnesses have been under police investigation during the

investigation of the present case, and then cites cases where the prosecutor and the witness were unaware of the investigation.  Pl. Br. at 13.

Obviously, Mr. Shine is not requesting the government to produce what it cannot reasonably discover or know.  As noted above, however, the government cannot rely upon the right hand not knowing what the left hand is doing.  The prosecution has a duty to find out what the police working on the case know.  *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 1567 (1995).

Finally, the government makes the curious statement that they will limit production to the extent required by Evidence Rule 608(b).  This evidence rule is completely irrelevant to the question of whether the government must produce impeachment or credibility evidence.  The question of admissibility into evidence has no bearing upon the government's duty here.

*Shine's Request No. 8*:

The government indicates that it will disclose information that a witness has medical, or psychiatric, or substance abuse problems "that materially affect the witness' ability to observe . . . ."  Pl. Br at 13.  Mr. Shine objects to the government's interpretative effort here.  The government should not be allowed to interpose its own judgment on whether a witness' medical, psychiatric, or drug problems "materially" affects observation or memory.  If the witness has such disability, the government should be required to disclose it.

12

*Shine's Requests Nos. 11, 12*:

The government's position here is difficult to fathom. Pl. Br. at 14. The name of any witness known to the government who has advised the government that they disbelieve Mr. Shine's involvement in any aspect of the crimes charged should be disclosed. The case cited by the government, *United States v. Bryan*, 868 F.2d 1032, 1037 (9th Cir. 1989), is not applicable to Mr. Shine's request.

If the government interviewed a witness, and the witness stated that his belief that Mr. Shine was, for example, not involved in the homicide, or that he played no significant role in drug trafficking, the government should be required to turn over the statement and to provide the name and address of the witness.

There may also be witnesses who say they know nothing about Shine's guilt that are, in context, exculpatory. For example, witness Z tells police he overheard Mr. Shine admit to witness Q that he did a criminal act. Police then interview witness Q, who denies that Shine said any such thing and otherwise has no incriminating evidence against Mr. Shine. The government should be required to divulge the identity of witness Q, and his statement to police, since his statement becomes favorable to Mr. Shine in light of witness Z's accusation.

*Shine Request No. 9*:

The government too narrowly interprets *Henthorn* to federal employees. This case may involve officers in a "joint task force" from several branches of law enforcement. All officers involved in the investigation, federal or not, should be subject to review. The distinctions between investigating agencies are not a basis for avoiding a review of

personnel files. *See United States v. Fort*, 472 F.3d 1106 (9th Cir. 2007), *en banc denied*,

___ F.3d ___, 2007 WL 686615 (March 08, 2007) (cooperating investigative non-federal

police agencies covered by federal discovery rules).

DATED this 22nd day of March, 2007.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

/s/ Michael D. Dieni
Assistant Federal Defender
Alaska Bar No. 8606034
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
mike_dieni@fd.org

Certification:

I certify that on March 22, 2007, a copy of the
foregoing document, with attachments, was
served electronically on:

Frank V. Russo, Esq.
James N. Barkeley , Esq.
Shawn C. Fuller , Esq.
Assistant United States Attorneys

/s/ Michael D. Dieni