NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska 99513-7567
(907) 271-5071
(907) 271-1500 (fax)
frank.russo@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:06-cr-00041-RRB |
| | ) | |
| Plaintiff, | ) | |
| | ) | **OPPOSITION TO MOTION** |
| vs. | ) | **TO SUPPRESS CELL PHONE** |
| | ) | **DATA** |
| THOMAS P. RANES, and | ) | |
| NOPENONE DENNIS SHINE, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

COMES NOW the United States of America, by and through undersigned

counsel, and hereby responds in opposition to defendant Shine's motion, filed at

docket 423, to suppress evidence pertaining to cellular telephone data obtained by

the United States. Shine filed a memorandum in support of this motion at docket

424, and requested an evidentiary hearing at docket 425. Defendant Ranes joined

this motion at docket 432.   These motions should be denied as a matter of law.

There is no reasonable expectation of privacy in the historical records of cellular

telephone usage, and no court has ever held to the contrary.  Even if this Court

were to hold that either defendant somehow had a reasonable expectation of

privacy in records supplied by a cellular telephone provider, there is no

suppression remedy available to the defendants.  As a result, an evidentiary

hearing is unnecessary to decide the issues presented by the motion.

## FACTUAL BACKGROUND

On November 6, 2006, the United States obtained, pursuant to 18 U.S.C.

2703(d), an Order from Magistrate Judge John D. Roberts.[1]  The Order compelled

Alaska Communications Systems Wireless Services ("ACS Wireless") to provide

call detail records, with cell site and locator information, for a cellular telephone

used by Nopenone Dennis Shine, for the period between May 30, 2005 and June 3,

2005.   A copy of this Order is attached hereto as Exhibit A.  Later, on December

8, 2006, the United States obtained a similar order from Judge Roberts to Alaska

DigiTel with respect to a cellular telephone subscribed to by Thomas P. Ranes, as

well as two other prepaid cellular telephones.  A copy of this Order is attached

---

[1]     Defendant Shine is incorrect in its assertion that "the government used grand jury subpoenas."  Defendant Shine's Memorandum of Law, p. 1.

hereto as Exhibit B.  Both cellular telephone providers complied with these Orders

and provided cellular telephone tower, sector information, and coverage maps for

these phones.[2]   This information has been turned over to the defendants in

discovery.  The defendants now move to suppress these records, claiming that

these historical acquisitions from cellular telephone providers were warrantless

searches that violated the defendants' "reasonable" expectation that records of

their historical movement would remain private.

## THE NATURE OF THE INFORMATION SUPPLIED

The defendant expends much effort illustrating how cellular telephones can

be used as tracking devices and how courts have been demanding the government

meet the probable cause standard to obtain prospective and real-time cellular

telephone information.  Unfortunately, this effort is wasted, because that is not

what happened here.  Rather, as Exhibits A and B illustrate, the records obtained

here were historical in nature.   The difference between real-time and historical

acquisition of cellular telephone information is explained by one district court as

follows:

---

[2]        Most cellular towers are divided up into three sectors, each roughly 120 degrees.
A coverage map details the span of each cellular tower and sector.

> "Real time" cell site information refers to data used by the
> government to identify the location of a phone at the present
> moment.  Real time cell site information is a subset of
> "prospective" cell site information, which refers to all cell site
> information that is generated after the government has received
> court permission to acquire it.  Records stored by the wireless
> service provider that detail the location of a cell phone in the
> past (i.e., prior to entry of the court order authorizing
> government acquisition) are known as "historical" cell site
> information.

In re Application for Order of a Pen Register, 402 F. Supp. 2d 597, 599 (D. Md.

2005) (footnote omitted).  Historical cell site information is quantitatively and

qualitatively different than real time information.  Unlike real time information,

historical data does not allow triangulation of telephones so as to locate their

precise location at any given time.  To be able to do this, one needs "[k]nowledge

of the locations of multiple towers receiving signals from a particular telephone at

a given moment . . . ."  In re Application for an Order for Prospective Cell Phone

Information, 460 F. Supp.2d 448, 451 (S.D.N.Y. 2006).  This can only come from

a real time acquisition of data.

The historical acquisition of data in this case (as with all historical

acquisitions) only captured single tower information; in other words, at a given

point in time, the information describes what tower (and sometimes sector) the

cellular telephone was <u>actually using</u>.  The detail provided by this information is far more limited, and implicates no privacy interests whatsoever:

> Where the law enforcement agents obtain information from only one tower at a time, they can determine that a cell phone is in the cell served by that tower, and, in some cases, which sector the tower faces the cell phone; but they can neither pinpoint the precise location of the cell phone nor track its movements.  Where, however, the government obtains information from multiple towers <u>simultaneously</u>, it often can triangulate the caller's precise location and movements by comparing the strength, angle, and timing of the cell phone's signal measured from each of the sites.

<u>Id.</u> at 452 (emphasis added).  The qualitative distinction between historical and real time data that can be ascertained by telephone companies is significant.  Companies only keep historical records on cell towers and sectors actually used by a phone.   Real time acquisition of this data allows cellular telephone companies to test the signals being received by a particular telephone from multiple towers at a given moment; this allows the use of mathematics to triangulate the signal and locate the caller in cases of emergencies and 911 calls.  However, cellular telephone companies only do this upon request or order, and otherwise do not maintain records necessary for triangulation in the regular course of their business.

As a result, the defendant's "Big Brother" fears simply are not realized in the case of historical acquisition of cell phone data, as was the case here.  Indeed, the information supplied by the telephone companies here is more benign than obtaining historical credit card records to determine where a person was shopping on a certain day and time.  In such a case, one would be able to determine the exact location of the user of the credit card at a given point in time.  Here, the cell phone records at issue indicate that the user was, at best, in a 120 degree area of a circle whose radius is roughly ten miles.  At best, this information allows the government to be more of a distant cousin than a "Big Brother".

## ARGUMENT

I.     THE PROVISION OF HISTORICAL CELLULAR TELEPHONE DATA DOES NOT IMPLICATE THE FOURTH AMENDMENT.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."   Whether a search and seizure is "unreasonable" depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action. See Rakas v. Illinois, 439 U.S. 128, 143 and n. 12 (1978); United States v. Chadwick, 433 U.S. 1, 7(1977).   This inquiry normally embraces two discrete

questions. The first is whether the individual, by his conduct, has exhibited an actual (subjective) expectation of privacy; in other words, whether the individual has shown that he seeks to preserve something as private. The second question is whether the individual's subjective expectation of privacy is one that society is prepared to recognize as "reasonable"; in other words, the individual's expectation, viewed objectively, is "justifiable" under the circumstances. <u>Smith v. Maryland</u>, 442 U.S. 735, 739 (1979) <u>citing</u> <u>Katz v. United States</u>, 389 U.S. 347 (1967)

    A.    <u>Defendant Ranes Has Not Demonstrated Standing With Respect to the Two Prepaid Cellular Telephones.</u>

Initially, the defendants have the burden of establishing that they had a reasonable expectation of privacy in the place or object "searched." <u>Rawlings v. Kentucky</u>, 448 U.S. 98, 104 (1980). Simply alleging that one has a possessory interest in an item is insufficient to demonstrate standing. <u>United States v. Zermeno</u>, 66 F.3d 1058, 1061 (9th Cir. 1995). The defendants have moved to suppress the cellular telephone data pertaining to four different telephones. Exhibit A is an order for records pertaining to the telephone number (907) 240-3314. At the time, this telephone was used by Nopenone Dennis Shine. Although Shine offers no evidence that possessed this telephone during the relevant period, it is clear from the Title III intercepts and other evidence that Shine used this

telephone, and was the subscriber to it.   Thus, the United States will concede his standing as it relates to this telephone.  Exhibit B is an order for records pertaining to three cellular telephones, one of which, (907) 229-0056, is subscribed to by Thomas Ranes .  Again, despite the lack of evidence offered by Ranes to support his possession of the phone during the relevant period, the United States will concede defendant Ranes' standing with respect to this telephone.

However, the other two cellular telephones, (907) 744-0219 and (907) 744-1155, are prepaid cellular telephone with no subscriber attached.  There is nothing in the record from which to infer that these were possessed by Ranes.  Indeed, the defendant's trial strategy is likely to be exactly the opposite: that Ranes did not carry these telephones.  It will be the United States' contention that he did in fact carry and use these telephones.  However, simply because the United States' will take that position is insufficient to confer standing upon the defendant.  A defendant "is not entitled to rely on the government's allegations in the pleadings, or positions the government has taken in the case, to establish standing." United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) (citing United States v. Singleton, 987 F.2d 1444, 1449 (9th Cir. 1993)). Thus, defendant Ranes has not demonstrated that he has suffered an invasion of an expectation of privacy, reasonable or otherwise, with respect to records of the two prepaid telephones (or

Shine's cell phone records).  Similarly, Shine has not demonstrated he has suffered

an invasion of privacy with respect to the records of Ranes' cell phone or the

prepaid phones.

      B.      <u>Any Expectation of Privacy in Historical Cell Phone Records that
Reveal Past Cell Site Usage is Unjustified and Unreasonable.</u>

The Supreme Court has held that a defendant has no legitimate expectation

of privacy in records maintained by a third party in the ordinary course of its

business.  <u>See, e.g.</u>, <u>United States v. Miller</u>, 425 U.S. 435 (1976).  In <u>Miller</u>, the

Court held that a bank depositor has no legitimate expectation of privacy in

financial information exposed to the bank in the ordinary course of its business:

> The depositor takes the risk, in revealing his affairs to another,
> that the information will be conveyed by that person to the
> Government . . . . This Court has held repeatedly that the
> Fourth Amendment does not prohibit the obtaining of
> information revealed to a third party and conveyed by him to
> Government authorities, even if the information is revealed on
> the assumption that it will be used only for a limited purpose
> and the confidence placed in the third party will not be
> betrayed.

<u>Id.</u> at 442.  Similarly, the Supreme Court has extended this analysis to information

maintained by telephone companies and then turned over to the government

through the use of pen registers.  <u>Smith v. Maryland</u>, 442 U.S. 735 (1979).  In so

doing, the Court rejected the petitioner's argument that, although he voluntarily

conveyed telephone numbers to the company by dialing them, he (incorrectly)

believed that the telephone company lacked the ability to track local calls:

> This argument does not withstand scrutiny.  The fortuity of
> whether or not the phone company in fact elects to make a
> quasi-permanent record of a particular number dialed does not
> in our view, make any constitutional difference.  Regardless of
> the phone company's election, petitioner voluntarily conveyed
> to it information that it had facilities for recording and that it
> was free to record . . . .  We are not inclined to make a crazy
> quilt of the Fourth Amendment, especially in circumstances
> where (as here) the pattern of protection would be dictated by
> billing practices of a private corporation.

Id. at 745.

Shine attempts to distinguish Smith by claiming that while he may have

voluntarily disclosed the numbers he called, he had no way of knowing that his

location was also being disclosed to cell providers.  This argument assumes

society's technological naivete and fails for the same reasons that Smith's

argument concerning the privacy of local calls failed:   It makes a Fourth

Amendment interest contingent upon a user's understanding of how a particular

cell phone company provides service.  Like Smith, this argument attempts to make

a "crazy quilt" out of the Fourth Amendment, as a legitimate expectation of

privacy would be dependent upon the record-keeping ability of each cell phone

company.   Presumably, the user of a cell phone knows that his provider can

provide records, and, as in <u>Smith</u> and <u>Miller</u>, assumes the risk that the provider will turn over to the government the details it maintains concerning his cell phone usage.

The Sixth Circuit has held that, in the case of prospective cell site data, phone users have no legitimate expectation of privacy in the disclosure of records by cell phone companies.  <u>See</u> <u>United States v. Forest</u>, 355 F.3d 942 (6th Cir. 2004), <u>vacated on other grounds</u>, 543 U.S. 1100 (2005).   There, the defendant argued that the DEA's use of prospective cell site data turned his cellular telephone into a tracking device, leading to the seizure of evidence and ultimately his arrest.  <u>Id.</u> at 948.  As in the case at bar, the defendant moved to suppress the cell site data.  In addressing the initial question whether the defendant had a reasonable expectation of privacy in such data, the court likened the seizure to the one approved in <u>United States v. Knotts</u>, 460 U.S. 276 (1983):

> In the present case, Garner acknowledges that the cell-site data was used to track his movements only on public highways.  The rationale of <u>Knotts</u> therefore compels the conclusion that Garner had no legitimate expectation of privacy in the cell-site data because the DEA agents could have obtained the same information by following Garner's car.  <u>See</u> <u>Knotts</u>, 460 U.S. at 280-81 (emphasizing that the defendants had no legitimate expectation of privacy because the police could have tracked the defendants' movements by driving behind them on public roads.

Forest, 355 F.3d at 951.  The court later stated that "the cell-site data is simply a proxy for Garner's visually observable location."  Id.  Accordingly, the Court found no reasonable expectation of privacy in the cell site data and thus the exclusionary rule did not apply.  See also United States v. Karo, 468 U.S. 705, 721 1984) (there is no reasonable expectation of privacy when a tracking device is monitored as it travels through a public place).

The cell-site data obtained here is far less invasive than that obtained by the DEA in Forest.  It pertains to only to historical location records, not prospective cell site usage that would allow the DEA to track the defendant's current location. Similarly, the data provides public locations of cell towers and does not target the defendants' homes or other private places.  In this way, this case is distinguishable from Kyllo v. United States, 533 U.S. 27 (2001), in which the Supreme Court found that the use of a thermal imaging device on a home constituted a search. There, law enforcement targeted a home to gain information relating to activities underway inside.  Here, law enforcement targeted several cellular telephones' historical location, which information revealed nothing about what was going on inside the defendants' homes or other private places.  As mentioned above, the discovery of this historical information is much less invasive than reviewing a person's credit card records or bank records, which can be obtained by a simple

grand jury subpoena.  Moreover, if a possessor of a cell phone intends to keep the cell phone's location private, he could do so by simply turning off the cell phone, causing the unit to cease transmitting signals to outside parties.

In sum, there was no legally cognizable Fourth Amendment seizure here.  In using their cell phones, Ranes and Shine assumed the risk that their providers would keep records of their use and turn those records over the the government.  Moreover, the records simply provide information about general areas in which the defendants traveled for a three-day period in 2005.  Had they been aware of the criminal nature of the defendants' travels that day, investigators could have followed them and discovered their exact public location.  This type of activity does not implicate the Fourth Amendment.  Similarly, all that the cell site records allow law enforcement to do is approximate where the defendants' cell phones were, which is neither a search nor a seizure.  If the Court holds that there was a seizure, it would in effect invalidate the power of the United States to subpoena virtually any type of historical document from a third party without prior court approval.

II.     SUPPRESSION IS NOT AN AVAILABLE REMEDY IN ANY EVENT.

Even if the defendant were to somehow convince the court that there was some legally cognizable seizure of electronic information without cause, no

suppression remedy exists under the statutes which govern the production of this information.  Although these statutes are not cited by the defendant, they provide the framework to consider the defendants claims that the government turned the defendants' cell phones into "tracking devices."  The Electronic Communications Privacy Act of 1986 ("ECPA") consists of three titles: provisions governing tracking devices (Title I, codified at 18 U.S.C. § 2518 et seq., as well as the mobile tracking device provision at 18 U.S.C. § 3117), stored electronic communications (Title II, called the "Stored Communications Act", codified at 18 U.S.C. § 2701 et. seq.), and pen registers and trap and trace devices (Title III, which includes the Pen / Trap Act at 18 U.S.C § 3121 et seq., as well as the Wiretap Act at 18 U.S.C. § 2510 et seq.).  Each category of electronic surveillance requires varying legal process for obtaining legal process, and provides remedies for violations.

Given this framework, the defendant appears to contend that his cellular telephone was used as a "tracking device", which, without a showing of probable cause, would violate 18 U.S.C. § 3117.  The government's order to the cell provider's was made pursuant to the Stored Communications Act and 18 U.S.C. § 2703(d), which requires specific and articulable facts.  Under either statute, suppression is not an appropriate remedy.

First of all, the Stored Communications Act expressly rules out exclusion as a statutory remedy for violations.  See United States v. Smith, 155 F.3d 1051, 1055-56 (9th Cir. 1998) ("[U]nlike the Wiretap Act, the Stored Communications Act does *not* provide an exclusion remedy.  It allows for civil damages, *see* 18 U.S.C. § 2707, and criminal punishment, *see* 18 U.S.C. § 2701(b), but nothing more."); see also 18 U.S.C. § 2708 (providing that §§ 2707 and  2701(b) are the exclusive remedies for violations of the Stored Communications Act).  Moreover, even if the Court accepted the defendant's claim that his cell phone was turned into a "tracking device" that in turn violated the warrant requirement contained in 18 U.S.C. § 3117, suppression would not be required.  See Forest, 355 F.3d at 950 (agreeing with the D.C. Circuit in United States v. Gbemisola, 225 F.3d 753, 758 (D.C. Cir. 2000) that § 3117 does not prohibit the use of evidence obtained by the use a tracking device acquired without a § 3117 order).  As a result, the defendant has neither a statutory nor constitutional basis for suppression.

## CONCLUSION

The defendants have no reasonable expectation of privacy in cell site records maintained by a third party in the ordinary course of its business.  These records only give law enforcement a general idea of the defendant's location in the past.  In this way, they are less invasive than many historical records, including

travel, bank, or credit card records, which in fact provide more detailed

information concerning the defendant's location at various times.  As a result, no

grounds for exclusion – constitutional or statutory – exist.  Further, no evidentiary

hearing is necessary, as this issue can be decided as a matter of law based on the

authorities cited herein.

      RESPECTFULLY SUBMITTED this 23rd day of April, 2007, in

Anchorage, Alaska.

      NELSON P. COHEN
      United States Attorney

      s/ Frank V. Russo
      FRANK V. RUSSO
      Assistant U.S. Attorney
      Federal Building & U.S. Courthouse
      222 West Seventh Avenue, #9, Room 253
      Anchorage, Alaska  99513-7567
      (907) 271-5071
      (907) 271-1500 (fax)
      Frank.Russo@usdoj.gov

**CERTIFICATE OF SERVICE**

I declare under penalty of perjury that a true
and correct copy of the foregoing was sent to
the following counsel of record on April 23, 2007, via:

      (X )Electronic Filing

Michael Filipovic and Michael Dieni

Executed at Anchorage, Alaska, on April 23, 2007

s/ Frank V. Russo
Office of the U.S. Attorney

U.S. v. RANES et al.