Kevin F. McCoy
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
601 West Fifth Avenue, Suite 800
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NOPENONE DENNIS SHINE,<br><br>Defendant. | Case No. 3:06-cr-0041-02-RRB<br><br>**DENNIS SHINE'S RESPONSE TO THE GOVERNMENT'S OPPOSITION (DOCKET NO. 436) TO HIS MOTION TO SUPPRESS EVIDENCE DERIVED FROM THE WARRANTLESS SEIZURE OF CELL PHONE DATA (DOCKET NO. 423)** |

**I.    Introduction.**

The government opposes Dennis Shine's motion to suppress evidence derived from the warrantless seizure and search of cell phone data maintained on his behalf. The government makes four arguments. First, it says that no evidentiary hearing is necessary because the issue raised can be resolved as a matter of law. Second, it asserts that there is a quantitative difference between historical cell phone data and real time cell phone data. *See e.g.* Government Opp. at 12. Third, it claims that Mr. Shine does not have a reasonable expectation of privacy that historical cell phone data will not be used for the purpose of tracking people. Finally, it suggests that suppression is not an available remedy to this Fourth Amendment challenge.

The government is mistaken on each count. Here is why.

**II.     Resolution Of The Fourth Amendment Challenge Requires An Evidentiary Hearing.**

The questions raised by Mr. Shine in this motion are questions of first impression. An evidentiary hearing is necessary to (1) establish the basis the government used to gather the records at issue; (2) ascertain whether there is a meaningful distinction between historical cell phone data and real time cell phone data; and (3) ascertain whether the data the government gathered outside the warrant process intrudes indiscriminately into locations readily recognized as private under the Fourth Amendment.

First, an evidentiary hearing is needed to determine precisely how the government obtained the challenged evidence. The government claims that "Defendant Shine is incorrect in its (sic) assertion that 'the government used grand jury subpoenas[.]'" to gather the challenged evidence. *See* Government Opp. at 2, n.1.  The records, the government continues, were obtained using two underseal 18 U.S.C. § 2701(c) orders not previously disclosed to the defense. This representation appears inconsistent with documents and records actually disclosed to the defense. The records disclosed to the defense contain the following notation on each page: "Wireless AMA Call Records for Target No. 240-3314 Pursuant to Grand Jury Subpoena No. A070056." *See* Exhibit 1 (Records obtained from ACS disclosed pursuant to Fed.R.Crim.P. 12(b) and Fed.R.Crim.P. 16).  An evidentiary hearing is necessary to factually resolve how the government gathered the challenged evidence.

Second, as explained below, an evidentiary hearing is needed to ascertain whether there is a meaningful distinction between historical cell phone data acquired outside the search warrant process and prospective cell phone data which most courts say must be obtained in

conformity with the Fourth Amendment. An evidentiary hearing is needed to determine precisely what distinction the government relies on and whether it has any Fourth Amendment significance.

Third, again as explained below, an evidentiary hearing is needed to ascertain whether the data the government gathered outside the warrant process intrudes indiscriminately into places recognized as protected under the Fourth Amendment.

### III. There Is No Meaningful Fourth Amendment Distinction Between Historical Cell Site Information And Prospective Cell Site Information.

The government dismisses Mr. Shine's Fourth Amendment challenge by arguing that there a quantitative distinction between historical cell cite information and prospective cell site information. Mr. Shine agrees that there are some differences between historical cell site information and prospective cell site information. However, it is a distinction without a difference.

District Courts confronting this question have been asked to respond to statutory applications for both real time data and historical cell phone data. The majority of district courts have rejected these statutory applications absent compliance with the Fourth Amendment warrant requirement. *See In re Application of the United States of America for Orders Authorizing the Installation and Use of Pen Registers and Caller Identification Devices on Tel. No. [Sealed] and [Sealed]*, 416 F.Supp.2d 390 (D. Md. 2006); *In re Application of the United States of America for an Order Authorizing the Installation and Use of a Pen Register and/or Trap and Trace for Mobile Identification No. (585) 111-1111 and the Disclosure of Subscriber and Activity Info. Under 18 U.S.C. § 2703*, 415 F.Supp.2d 211 (W.D.N.Y. 2006); *In the Matter of the Application of the United States of America for an Order Authorizing the Release of Prospective Cell Site Info.*, 407 F.Supp.2d

132 (D.D.C. 2005); *In the Matter of an Application of the United States for an Order (1) Authorizing the Use of a Pen Register and a Trap and Trace Device and (2) Authorizing Release of Subscriber Info. and/or Cell Site Info.*, 396 F.Supp.2d 294 (E.D.N.Y. 2005); and *In re Application for Pen Register and Trap/Trace Device with Cell Site Location and Auth.*, 396 F.Supp.2d 747 (S.D.Tex. 2005).

Courts have recognized a difference between real time cell phone data and historical cell phone data. However, the difference does not have Fourth Amendment significance because there is no real meaningful difference between real time data and historical data.

> Many of the initial applications for cell site information sought information that could be used for triangulation. After these applications were rejected by many courts, the government began to request information regarding only one tower at a time, apparently in the hope that applications for less detailed and invasive information would meet with a warmer judicial reception. This application is part of the latter group, seeking the identity of only one tower receiving transmissions – presumably the tower receiving the strongest signal – from the subject telephone at a particular time. **The government's arguments for statutory authorization, however, apply equally whether the information is obtained from one antenna tower at a time or from many simultaneously.** In other words, if the Pen Register Statute and the Stored Communications Act together authorize the disclosure of cell site information from a single tower, there is no reason to believe that they would not authorize disclosure of such information from multiple antenna towers simultaneously.

*In Re Application of the United States for an Order for Prospective Cell Site Location Information on a Certain Cellular Telephone*, 460 F.Supp.2d 448, 452 (S.D.N.Y. 2006) (footnotes omitted, emphasis added).

What the government has done in the present case is obtain historical cell site information dealing with originating and terminating cell towers. But this is precisely the kind of

application district courts have rejected in the prospective application context. *See e.g. In the Matter of the Application of the United States of America for an Order Authorizing the Disclosure of Prospective Cell Site Information*, 412 F.Supp.2d 947 (E.D. Wis. 2006). In this last case, United States Magistrate Judge Callahan rejected the government's statutory request for prospective cell site information limited to the originating cell tower and the terminating cell tower. Magistrate Judge Callahan denied the application with the following explanation:

> To be sure, that which the government is seeking in the instant application is not information about the location of a cell phone every minute of every day that the cell phone was on. Instead, the government is only seeking the location(s) of the cell towers being used by the cell phone at the commencement and termination of calls. But even such less precise location information was included in the "tracking information" about which Congress was concerned and to which [FBI Director Louis J. Freeh's] mollifying remarks were directed. To reiterate, Director Freeh testified, *inter alia*, that "[s]ome cellular carrier's do acquire information relating to the general location of a cellular telephone for call distribution analysis purposes. However, this information is not the specific type of information obtained from 'true' tracking devices, which can require a warrant or court order when used to track within a private location not open to public view." Nevertheless, in an effort to assuage Congress's concerns, Director Freeh went on to state that :
>
>> [i]n order to make clear that the acquisition of such information is not being sought through the use of pen register or trap and trace device, and is not included within the term "call setup information," we are prepared to add a concluding phrase to this definition to explicitly clarify the point: except that such information (call set up information) shall not include any information that may disclose the physical location of a mobile facility or service beyond that associated with the number's area code or exchange.
>
> * * * * * *

> The bottom line is that the array of statutes invoked by the issues in this case, i.e., the Pen/Trap Statute, the [Stored Communications Act], and [the Communications Assistance for Law Enforcement Act of 1994] present much more a legislative collage that a legislative mosaic. If Congress intended to allow prospective cell site information to be obtained by the combined authority of the SCA and the Pen/Trap Statute, such authority is not at all apparent from the statutes themselves. Indeed, for the reasons set forth above, the legislative history of [the Communications Assistance for Law Enforcement Act of 1994] would suggest Congress's intent was otherwise.

*Id.* at 957-58.

If the government cannot get originating cell tower location information and terminating cell tower information prospectively without a warrant, how is it that it can retrieve it outside the warrant process merely because the information sought is historical?

The government's claimed distinction has no Fourth Amendment significance.

### IV. The Government's Use of Historical Cell Site Data Intrudes Indiscriminately Into Areas Clearly Protected By The Fourth Amendment.

Next, the government suggests that use of historical cell site data does not intrude into areas protected by the Fourth Amendment.

However, the government's use and application of cell phone tracking technology in this instance is not limited to public spaces. The attached map details the cell site tower location information challenged in this motion. *See* Exhibit B (map with cell tower location information). This map covers the greater Anchorage, Alaska area and part of the Mat Sue Valley area. Clearly there are locations in this area that are protected by the Fourth Amendment. The "historical" status

of that information does not change the impact tracking has on locations protected by the Fourth Amendment.

In *United States v. Karo*, 468 U.S. 705 (1984), the court addressed the use of electronic tracking devices that happen to intrude into areas clearly protected by the Fourth Amendment. *Karo* involved the insertion of an electronic tracking device into a package that allowed law enforcement to track the package. The officers tracked the package as it went first to one home, then in succession into two other homes, then into two lockers in the same storage facility, and finally, into a third home where it was ultimately seized by law enforcement. The court rejected the government argument that no Fourth Amendment interest was at stake.

> We cannot accept the Government's contention that it should be completely free from the constraints of the Fourth Amendment to determine by means of an electronic device, without a warrant and without probable cause or reasonable suspicion, whether a particular article – or a person for that matter – is in an individual's home at a particular time. Indiscriminate monitoring of property that has been withdrawn from public view would present far too serious a threat to privacy interests in the home to escape entirely some sort of Fourth Amendment oversight.
>
> \* \* \* \* \* \*
>
> The government's contention that warrantless beeper searches should be deemed reasonable is based upon its depreciation of the benefits and exaggeration of the difficulties associated with procurement of a warrant. The Government argues that the traditional justifications for the warrant requirement are inapplicable in beeper cases, but to a large extent that argument is based upon the contention, rejected above, that the beeper constitutes only a minuscule intrusion on protected privacy interests.

*Id.* at 716 (footnotes omitted). *See also Kyllo v. United States*, 533 U.S. 27 (2001) (thermal imaging of a home constitutes a search). The government's use of historical cell site information is

indiscriminate and makes no effort whatsoever to insure the it does not intrude into areas readily protected by Fourth Amendment jurisprudence.

The government's reference to *United States v. Forest*, 355 F.3d 942 (6th Cir. 2004), *vacated on other grounds*, 543 U.S. 1100 (2005), is not persuasive. First, the agents were already actually following Forest as he traveled on public highways when they momentarily lost sight of him. Pinging the cell phone while he traveled on the public highway merely enabled the agents to quickly reestablish visual contact. Moreover, at the time they pinged the cell phone, the agents already had court authorization to monitor the content of any phone conversations from the cell phone. For these reasons, the court concluded that Forest and his co-defendant were unable to establish a Fourth Amendment violation.

In the present case, the government was not actively following Mr. Shine and therefore were not trying to locate him as he traveled on a public highway. Likewise, no court even authorized the government to monitor Mr. Shine's conversations on this cell phone in 2005. For these reasons, the government's citation to *Forest* is not helpful.

**V.    Suppression Remains The Remedy For Fourth Amendment Violations.**

Finally, the government says that suppression is not an appropriate remedy under the Electronic Communications Privacy Act, the Stored Communications Act, or the Pen/Trap Act. The short answer is that this is a Fourth Amendment challenge and not a statutory challenge. Suppression remains the remedy for all warrantless violations of the Fourth Amendment. *Wong Sun v. United States*, 371 U.S. 471 (1963); *Weeks v. United States*, 232 U.S. 383 (1914).

## VI. Conclusion.

For all these reasons, Mr. Shine persists both in his motion to suppress evidence derived from the warrantless seizure of cell phone data maintained on his behalf and in his request for an evidentiary hearing.

DATED this 7th day of May 2007.

Respectfully submitted,

/s/ Kevin F. McCoy
Assistant Federal Defender
601 West 5th Avenue, Suite 800
Anchorage, AK  99501
Ph:  (907) 646-3400
Fax:  (907) 646-3480
kevin_mccoy@fd.org

Certification:
I certify that on May 7, 2007,
a copy of *Dennis Shine's Response*
*to the Government's Opposition (Docket*
*No. 436) to His Motion to Suppress Evidence*
*Derived from the Warrantless Seizure of Cell*
*Phone Data (Docket No. 423)* was served
electronically on:

Frank V. Russo, Esq.
James N. Barkeley , Esq.
Shawn C. Fuller , Esq.
Assistant United States Attorneys
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

s/Kevin F. McCoy