NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
THOMAS C. BRADLEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
frank.russo@usdoj.gov
thomas.bradley@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,      )<br>                               )<br>             Plaintiff,        )<br>                               )<br>     vs.                       )<br>                               )<br>NOPENONE DENNIS SHINE,         )<br>                               )<br>             Defendant.        )<br>_____) | Case No. 3:06-cr-00041-02-RRB<br><br>**OPPOSITION TO MOTION<br>TO SUPPRESS FIRST<br>POLICE STATEMENT** |

COMES NOW the United States of America, by and through undersigned counsel, and hereby responds to defendant Shines' "motion to suppress first police statement", filed on April 16, 2007 at docket 408, with a supporting memorandum of law filed at docket 409.  This motion is a subject of the United States motion to

strike, filed concurrently herewith.  Because the Court has already set a hearing on this issue already, the United States is filing this brief reply in opposition.

## FACTUAL BACKGROUND

On April 22, 2006, the defendant was arrested pursuant to a Federal arrest warrant.  After his arrest, he was transported to the DEA's Anchorage Field Office.  During processing, DEA Special Agent Zachary Jones read the defendant his <u>Miranda</u> warnings.  The defendant waived his <u>Miranda</u> rights and agreed to speak to the investigators.  A summary of the defendant's statement is set forth in the Report of Investigation by Special Agent Zachary Jones, attached hereto as Exhibit A.  Now, some eleven months after this statement was provided, the defendant moves to suppress this statement, claiming that he "has no recollection of the contents of the [<u>Miranda</u>] advisement."  Ironically, he apparently does have a recollection of the fact that the investigators "implied that he should think about the well-being of his girlfriend,"and the "implication was that he would suffer a lesser penalty if he cooperated."

On May 10, 2007, Sergeant Michael Duxbury of the Alaska State Troopers testified regarding the interview.  He related that Shine was initially minimizing and "compartmentalizing" his involvement in the crimes, essentially offering a willful blindness or deliberate ignorance scenario.  Sergeant Duxbury related that

he asked Shine about Buddhist principles, and how those may be in conflict with Shine's apparent dishonesty. Shine then agreed and admitted greater knowledge about the conspiracy.

## ARGUMENT

I.   THE DEFENDANT VOLUNTARILY WAIVED HIS MIRANDA RIGHTS AND HIS CONFESSION WAS NOT THE PRODUCT OF COERCIVE POLICE ACTIVITY.

It is well-established that the government bears the burden of showing a free and voluntary waiver of Miranda rights. Miranda v. Arizona, 384 U.S. 436, 475 (1966); Lego v. Twomey, 404 U.S. 477, 489 (1972) (the government has the burden of proving voluntariness by a preponderance of the evidence). A defendant's waiver of Miranda rights "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). The test is whether, considering the totality of the circumstances, the government obtained the statement by physical or psychological coercion or by improper inducement so that the suspect's will was overborne. United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981). It is not enough that the confession was caused by the interrogation; rather, it must be caused by improper police conduct. United States v. Barnett, 814 F. Supp. 1449, 1456 (D. Alaska 1992).

In Colorado v. Connelly, the Supreme Court clarified and refined the totality of the circumstances test, holding that, "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." 479 U.S. 157, 167 (1986). In Connelly, the Court emphasized that in the confession cases it had decided over the previous 50 years, the "crucial element" had been the presence of "police overreaching." Id. at 163. In support, the Court cited several cases in which police overreaching invalidated a suspect's waiver. Id., n. 1, citing Mincey v. Arizona, 437 U.S. 385 (1978) (defendant subjected to 4-hour interrogation while incapacitated and sedated in intensive-care unit); Greenwald v. Wisconsin, 390 U.S. 519 (1968) (defendant, on medication, interrogated for over 18 hours without food or sleep); Beecher v. Alabama, 389 U.S. 35 (1967) (police officers held gun to the head of wounded confessant to extract confession); Davis v. North Carolina, 384 U.S. 737 (1966) (16 days of incommunicado interrogation in closed cell without windows, limited food, and coercive tactics); Reck v. Pate, 367 U.S. 568 (1961) (defendant held for four days with inadequate food and medical attention until confession obtained); Culombre v. Connecticut, 367 U.S. 568 (1961) (defendant held for five days of repeated questioning during which police employed coercive tactics); Payne v. Arkansas, 356 U.S. 560 (1958) (defendant

held for incommunicado for three days with little food; confession obtained when officers informed defendant that Chief of Police was preparing to admit lynch mob into jail); Ashcraft v. Tennessee, 322 U.S. 143 (1944) (defendant questioned by relays of officers for 36 hours without an opportunity for sleep).

In the case at bar, there is not a scintilla of credible evidence to suggest that the officers involved were overreaching during their questioning of the defendant. The defendant was not threatened, physically abused, held incommunicado for any significant amount of time, or deprived of food, water or medical treatment. When viewed in light of the cases cited by the Supreme Court in Connelly, the facts do not support the defendant's argument that the agents were overreaching. Nor was the defendant "psychologically coerced." Cf. Tingle, 658 F.2d 1332.

In Tingle, the Ninth Circuit invalidated a confession of a defendant where agents grossly misled a defendant regarding her potential sentence as well as the probable consequences of refusing to be interrogated. Id. In holding that Tingle's confession was the product of psychological coercion, the court found several factors significant in its analysis: (1) the agents interrogating Tingle told her that she faced a penalty of up to forty years, when in fact her sentence was only a matter of months; (2) the agents mentioned Tingle's son for no good reason; (3) the agents said that they would inform the prosecutor that she was "stubborn or

hard-headed" if she refused to cooperate; (4) the agents accused Tingle of lying; (5) Tingle repeatedly maintained her innocence; and (6) Tingle was noticeably shaking and cried for at least ten minutes during the interview. Id. at 1334.

The facts of the defendants' questioning are a far cry from the facts of the interrogation in Tingle. No one exaggerated the penalties that Shine faced, or told him that the failure to cooperate would be held against him. While Shine briefly maintained his innocence, he quickly changed his story and admitted to knowledge of the conspiracy. Any mention of his girlfriend was purely incidental to the conversation, unlike the ploy used by law enforcement in Tingle.[1] Shine confessed to his involvement in the conspiracy in a conversational tone, without shaking or sobbing. Although the investigators may have attempted to create a climate conducive to extracting inculpatory information, their interrogation did not rise to the level of "psychological pressure." See, e.g., United States v. Boyce, 594 F.2d 1246, 1250 (9th Cir. 1979) (holding, in pertinent part, that defendant's confession was voluntary even though agents asked him many questions about all kinds of personal matters, appealed to his loyalty to his country and his family, and invited

---

[1] Indeed, Shine's girlfriend accompanied Shine to Whitehorse, Canada, where he dropped off money to the source of supply.

him to consider whether it would be to his advantage to discuss whatever was on his mind with the agents).

In *Brewer v. Williams*, 430 U.S. 387 (1977) the Supreme Court held that a planned "conversation" with a defendant was effectively "interrogation" and was administered in violation of the defendant's right to counsel.[2]  Attempts by other defendants to analogize this case to their own benefit have largely failed, as the decision was based on Sixth Amendment right to counsel concerns as opposed to Fifth Amendment self-incrimination.  William was again convicted after remand and retrial in which the evidence of his admissions was properly excluded based on *Brewer.  See Nix v. Williams*, 467 U.S. 431 (1984)(denying habeas relief ).

For example, in *United States v. Boyce,* 594 F.2d 1246, 1250 (9th Cir. 1979), the court held that FBI agents did not act improperly when they appealed to Boyce's loyalty to his country and family and subsequently obtained incriminating

---

[2] Williams was arrested in Davenport, Iowa, for kidnaping and murdering a 10-year old girl on Christmas Eve.  He was driven to Des Moines in the custody of two police officers, both of whom were fully aware that Williams was represented by lawyers in both Davenport and Des Moines and that the lawyers had advised him not to discuss the charges with police.  One of the officers had made an agreement with Williams' lawyer that the officers would not question Williams during the drive.  Nevertheless, Detective Leaming began a wide-ranging conversation on many topics, including religion, as soon as the journey began.  He made an emotional appeal to Williams to show the officers the gravesite to permit the body of the little girl to be returned to the parents for a "Christian burial."  Williams succumbed to the technique and took the officers to the dead child.

admissions.³ Distinguishing *Brewer* as lacking in "any similarity" to the Boyce case, the court held that the agents' attempt "to create a climate which would be conducive to extracting inculpatory information" did not somehow overbear the defendant's will. *Id.* See also *Stawicki v. Israel*, 778 F.2d 380 (7th Cir. 1985) (confession to rape and murder held voluntary where officer discussed Catholic religious beliefs and appealed for "Christian burial" of victim, whose body unbeknownst to the defendant had already been found).

Shine's confession was voluntary and not the product of improper coercion. Nothing in Duxbury's testimony suggested and undue promises, threats, or other appeals that would have overborne the defendant's will to resist interrogation.

## CONCLUSION

The defendant was properly advised of his Miranda warnings and knowingly and voluntarily waived his rights. The defendants vague allegations about what the investigators implied are without basis. Even taking these vague and unsupported facts as true for purposes of this motion, the questioning of the defendant does not amount to improper coercion. Accordingly, the Court should deny the motion.

---

³Boyce was charged with espionage for selling secrets to the Soviet Union. His exploits were documented in the book and movie *The Falcon and the Snowman*.

RESPECTFULLY SUBMITTED this 11th day of May, 2007, in Anchorage, Alaska.

>NELSON P. COHEN
>United States Attorney
>
>s/ Frank V. Russo
>FRANK V. RUSSO
>Assistant U.S. Attorney
>Federal Building & U.S. Courthouse
>222 West Seventh Avenue, #9, Room 253
>Anchorage, Alaska  99513-7567
>(907) 271-5071
>(907) 271-1500 (fax)
>Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true
and correct copy of the foregoing was sent to
the following counsel of record on May 11, 2007, via:

(X )Electronic Filing

Michael Dieni

s/ Frank V. Russo
Office of the U.S. Attorney