UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>        Plaintiff,<br>vs.<br><br>(01) Thomas P. **Ranes**,<br>**(02) Nopenon Dennis Shine**,<br>(03) Dylan N. **Bales**,<br>(04) Curtis H. **McDonald**,<br>(05) Kevin A. **Browning**,<br>(06) Robert H. **McDonald**,<br>(07) Joshua S. **Murphy**,<br>(08) Justin **Killian**,<br>(09) Rodney W. **Rhoden**,<br>(10) James Robert **Ranes**,<br>(11) Samuel Joseph **Matechuk**,<br>(12) Mitchell S. **Leblanc**,<br>(13) Daniel J. **Kneitel**,<br>(14) Kurtis R. **Croy**,<br>(15) Kyle **McDonald-Wolochatiuk**,<br>(16) William C. **Yancey**,<br>(17) Yin Tak **MIU**,<br><br>        Defendants. | 3:06-CR-00041-RRB-JDR<br><br>**RECOMMENDATION REGARDING DEFENDANT SHINE'S MOTION TO SUPPRESS DEFENDANT'S FIRST POLICE STATEMENT**<br><br>(Docket No. 408) |

Defendant **Nopenon Dennis Shine** moves the court to suppress statements he made to law enforcement officers on April 22, 2006 following his arrest. He argues that he did not voluntarily waive his Miranda rights and any statements made thereafter were involuntary. Docket No. 408. The government filed an opposition to the motion at Docket No. 460. An evidentiary hearing was conducted before the magistrate judge on May 10 and 15, 2007. Upon due consideration of the evidence adduced and arguments of counsel. *The magistrate judge recommends that the court adopt findings of facts and conclusions of law as set forth below and that the Motion to Suppress be DENIED.*

### Findings of Fact

On April 22, 2006, Special Agent Zachary Jones, DEA, and Alaska State Trooper Michael W. Duxbury, participated in an interview of Nopenon Shine following Shine's arrest for drug trafficking offenses. The interview occurred about 10 or 11:00 p.m. in the interview room at the DEA office on Tudor Road. Neither officer was armed at the time and the handcuffs had been removed from Shine.

At the beginning of the interview, SA Jones read Mr. Shine the Miranda warnings from a DEA 13A Card which he carried with him. The card contained the following advisement:

> "Before we ask you any questions you must understand
> you have the right to remain silent, anything you say can

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd

2

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR   Signed by Judge John D. Roberts   05/24/2007; Page 2 of 9

> be used against you in court.  You have the right to talk to a lawyer for advice before we ask you any questions, and to have a lawyer with you during questioning.  If you cannot afford a lawyer one will be appointed for you before any questioning if you wish.  Do you understand?  Then, are you willing to answer some questions?"

After being so advised when asked if he understood his rights Mr. Shine replied, "Yeah, I'll answer some questions."

The interview began by asking Shine about his involvement with Mr. Ranes.  At first Mr. Shine responded that he was doing just what he was told to do by his friend Mr. Ranes.  Shine denied that he was a drug dealer and stated that he did not want to know what was going on.  The officers thought that Shine was not being very truthful with them up to this point based on what they already knew about the investigation.

Trooper Duxbury had what he characterized as a rudimentary knowledge of the tenants of Buddhism and sensed that because Mr. Shine had been born in Thailand he might relate to Buddhism.  He asked Mr. Shine if his family members were of the Buddhist religious persuasion.  Trooper Duxbury reminded Shine that one of the precepts of that religion was based on education and rules.  The trooper stated that in Buddhism, Karma comes into one's life in accordance with

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd

3

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR           Signed by Judge John D. Roberts           05/24/2007; Page 3 of 9

how that person participates in life. He encouraged Shine to be truthful in his statements. Mr. Shine then became more forthcoming during the interview. During the interview Trooper Duxbury, but not SA Jones, took a few notes. The interview was not tape recorded.

Mr. Shine agreed to answer some questions but not all questions. The officers explained to him the different degrees of cooperation namely that he did not have to answer all the questions but that they knew basically a lot of his involvement from their investigation. He could tell the officers if he wanted to speak to an attorney at any time during the process.

Prior to the questioning Ranes had been advised of the nature of the offences for which he had been arrested. Shine was not subjected to any physical coercion or psychological pressure to entice him to submit to interrogation. From the evidence I deduce that Shine's responses to the questions reflected his decision not to implicate Mr. Ranes, not that he was reluctant to participate in the interview. I conclude by a preponderance of the evidence that Shine unequivocally waived his right to remain silent by agreeing to answer some questions. It appears that Shine considered each question carefully thus demonstrating his understanding that he could talk to the agents about some things and not others if he chose to do so. He was clearly told that he could stop the interview at any time if he told the officers he did not want to answer any more questions. There was no discussion at the

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd

4

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR    Signed by Judge John D. Roberts    05/24/2007; Page 4 of 9

interview about the duration of any incarceration that Shine might be facing although it was made clear to Mr. Shine that he was in trouble with the law.

At one point in the interview Trooper Duxbury asked Shine about his girlfriend, Sari Bailey. Trooper Duxbury did not know about Bailey's mental health problems when the interview began. Mr. Shine informed the officers that Sari Bailey had been a passenger in the vehicle during one of the trips to Whitehorse (involved in the marijuana smuggling). The trooper asked him if he was concerned about her mental health and about how his participation in the events of the investigation were going to impact her life. The trooper felt that Mr. Shine had genuine concerns about the girlfriend. It was made known to Mr. Shine that how he cooperated in the investigation would have a direct impact on whether or not he would be able to have some influence in her future. Trooper Duxbury believed that Mr. Shine's ability to help himself would in turn provide him the ability to help her.

No promises were made to Mr. Shine as to what might occur if he cooperated except that it would be in his best interests. From the evidence I conclude that the officers did not engage in any unfair tactics or psychological coercion in their effort to encourage Mr. Shine to be truthful and forthcoming in his statements about the events of the investigation. There is no evidence that the religious topic or the verbal exchange about Mr. Shine's girlfriend overbore Shine's

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd

5

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR    Signed by Judge John D. Roberts    05/24/2007; Page 5 of 9

willingness to talk with the officers. Moreover, Shine waived his Miranda rights at the outset before those topics were ever broached.

## Discussion of the Law

The government bears the burden of proving voluntariness of a waiver of Miranda rights by a preponderance of the evidence. Lego v. Twomey, 404 U.S. 477, 489 (1972). Any waiver of the Miranda rights "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Moran v. Burbine, 475 U.S. 412, 421 (1986). In accessing the voluntariness of a waiver the court considers the totality of the circumstances and whether the statement was obtained by physical or psychological coercion or by improper inducement such that the suspect did not exercise his free will. United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981). A crucial element of the assessment is whether the confession was obtained by "police overreaching." Colorado v. Connelly, 479 U.S. 157, 163 (1986). Coercive police tactics will render a confession not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment. Id. at 167.

There is no evidence in the instant case that Shine was subjected to police overreaching during his questioning by the law enforcement officers. He was not threatened, physically abused or deprived of necessities such as food and water.

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd

6

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR    Signed by Judge John D. Roberts    05/24/2007; Page 6 of 9

Nor does the record support any claim that Shine was psychologically coerced to elicit his statements and a waiver of his Miranda rights.

Shine argues that the record regarding the taking of his statements is "fuzzy" because the interview was not recorded. Federal law does not require the officers to record an interview with a suspect. Both parties were provided an opportunity to present evidence regarding the circumstances of the interview. It is a not a prerequisite to finding that the defendant's statements were made voluntarily or that he was adequately advised of his Miranda rights which he waived to have a record of all questions that were asked of the subject at the interview. Shine argues that the agent's discussion of his girlfriend played upon his emotions thus rendering his statements not voluntary. The preponderance of the evidence indicates otherwise.

Shine further argues that his statements were involuntary because the officers told him that he could receive a smaller sentence by cooperating. Nothing in the evidence suggests that that statement was incorrect or that the officers used that advise as a hammer to get him to answer questions. To the contrary the evidence supports the conclusion that Shine understood his rights and agreed to talk with the officers. From the evidence it appears that Shine exercised his right to decline to answer some questions but not all of the questions. Telling Shine to think about his family (while deciding whether to cooperate) was not improperly

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd                     7

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR     Signed by Judge John D. Roberts     05/24/2007; Page 7 of 9

persuasive or coercive. During his initial responses Shine attempted to minimize his own conduct in the events. I conclude that Shine's statements/confession was voluntary even though the agents may have appealed to his loyalty to his Country and family when deciding whether to discuss matters of the investigation with the officers. Compare, <u>United States v. Boyce</u>, 594 F.2d 1246, 1250 (9th Cir. 1979) wherein the court held that FBI agents did not act improperly when they appealed to an espionage suspect's loyalty to his Country and family and subsequently obtained incriminating admissions from him.

      The evidence does not support the defendant's argument that the agents created a climate which was conducive to overcome the defendant's will or obtain inculpatory information. I find that Shine's statements were made voluntarily and were not the product of improper coercion, undue promises, threats, or actions that would have overborne the defendant's will to waive voluntarily his right to remain silent. **The motion to suppress lacks merit and should be DENIED. IT IS SO RECOMMENDED.**

      DATED this 24th day of May, 2007, at Anchorage, Alaska.

      /s/ John D. Roberts
      JOHN D. ROBERTS
      United States Magistrate Judge

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd   8

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR   Signed by Judge John D. Roberts   05/24/2007; Page 8 of 9

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than NOON, **Thursday, June 7, 2007**. Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. McCall v. Andrus, 628 F.2d 1185, 1187-1189 (9th Cir.), cert. denied, 450 U.S. 996 (1981). The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation United States v. Howell, 231 F.3d 615 (9th Cir. 2000). Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or recommendations objected to, the basis of the objection, and the points and authorities in support. Response(s) to the objections shall be filed on or before **Noon, Thursday, June 14, 2007**. The parties shall otherwise comply with provisions of D.Ak.L.M.R. 6(a).

Reports and recommendations are not appealable orders. Any notice of appeal pursuant to Fed.R.App.P. 4(a)(1) should not be filed until entry of the district court's judgment. See Hilliard v. Kincheloe, 796 F.2d 308 (9th Cir. 1986).

3-06-cr-00041-RRB-JDR SHINE @408 RR Re Mtn to Suppress 1st Police Stmt.wpd

9

RR @408 Re Deft Shine's Mtn to Suppress
Defendant's First Police Statement
3-06-cr-00041-RRB-JDR    Signed by Judge John D. Roberts    05/24/2007; Page 9 of 9