NELSON P. COHEN
United States Attorney

FRANK V. RUSSO
THOMAS C. BRADLEY
Assistant U.S. Attorneys
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov
Thomas.Bradley@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) Case No. 3:06-cr-00041-02-RRB |
| Plaintiff, | ) |
| vs. | ) UNITED STATES' SENTENCING<br>) MEMORANDUM |
| NOPENONE DENNIS SHINE, | ) |
| Defendant. | ) |

**SUMMARY OF SENTENCING RECOMMENDATIONS**

**TERM OF IMPRISONMENT. . . . . . . . . . . . . . . . . . . . . . 292  MONTHS**

**SUPERVISED RELEASE. . . . . . . . . . . . . . . . . . . . . . . . . 5 YEARS**

**SPECIAL ASSESSMENT. . . . . . . . . . . . . . . . . . . . . . . . . . $200.00**

The United States Probation Office ("USPO") has prepared a presentence investigation report ("PSR") in this case. The United States agrees with the factual and legal findings of the USPO.

## I.   BACKGROUND

The defendant was part of an international drug and money laundering conspiracy that is set forth in detail in the PSR. Initially, the defendant became involved with the conspiracy by helping weld hidden compartment fuel tanks for Thomas Ranes, who was working for Tom Cody. These fuel tanks were used to transport approximately 100 - 150 pound loads of marijuana across the border from Canada into Alaska. As the conspiracy progressed, the defendant welded larger concealed compartments, which were contained in trailers and flatbed trucks. The defendant drove to Canada on two to three occasions to deliver money for the conspiracy. The most recent of these trips occurred on February 23, 2006, at which time the defendant transported approximately $500,000 to Whitehorse in payment of a marijuana shipment.

During the entire period of the conspiracy, the defendant was a close personal friend of Thomas Ranes. In fact, the defendant taught Ranes how to weld, and continued to assist him after Ranes opened his own welding shop, "Ranes & Shine". It should be noted, however, that the defendant had no

ownership interest in the shop; its name was simply a play on the phrase "rain or shine". Nevertheless, the defendant worked at the shop and was paid wages for his work, including his work on hidden compartments to conceal marijuana. In this capacity, the defendant became friends with Tom Cody. In fact, the defendant used to house-sit for Cody when Cody was out of town.

This friendship changed in or about late May 2007, when Ranes told the defendant that 225 pounds of marijuana and one ounce of ecstasy were seized by the RCMP outside of Whitehorse. Ranes told the defendant that he had sent approximately $1 million dollars of Cody's money to meet the drivers of the seized load. Shine knew that Cody had been threatening Ranes and his family based upon debts owed by Ranes to Cody. The seized load and botched money transfer would only make things worse. In addition, Ranes told Shine that Cody had been threatening Shine and his girlfriend as well. This came as no surprise to Shine, as Ranes had told him on previous occasions that Cody "had nothing good to say" about Shine.

Ranes proposed that Shine kill Tom Cody in exchange for one-half of Cody's money that was en route to Vancouver; Ranes had told Cody that the driver was bringing the money back to Alaska. In addition, Ranes told Shine that he could also have one-half of a marijuana load that was brought in just prior to

the load being seized.  This was a 200 pound load, which was driven in by Rodney Rhoden, and was in a storage unit in Anchorage, unbeknownst to Joe Bryant and Tom Cody.  Initially, Shine, who had never committed any acts of violence before, thought about Ranes's proposal for a day or so.  Ranes pressured Shine to make his decision, because Cody would have to be dead before the truck with the money returned from Canada.  Ranes also told Shine that, if Shine did not want to do it, Ranes would kill Cody himself.

The next day, Shine and Ranes drove to the Palmer race track; Shine agreed to kill Cody in exchange for one-half of the money and marijuana.  In total, this amounted to approximately $900,000.  Ranes came up with the idea of killing Shine with a silenced pistol, which Shine manufactured at the Ranes and Shine shop.  Shine, however, balked on three prior set-ups to kill Cody, losing his nerve on each occasion.  Shine's plea agreement provides the factual basis for what occurred on the fourth attempt:

> On June 1, 2005, RANES dropped SHINE off at a location near Cody's house located at 6621 Our Own Lane in Anchorage.  SHINE went inside Cody's house and waited for him.  At approximately 2:30 pm, Cody arrived home and SHINE shot and killed him with a 9 mm Beretta fitted with a homemade silencer that SHINE manufactured at the Ranes & Shine shop.  SHINE then called RANES after the shooting, and RANES called him back using a prepaid cellular telephone.  RANES and SHINE spoke numerous times during which they attempted to coordinate the disposal of Cody's body.  Ultimately, SHINE

> transported Cody's body in the back of the 2004 Ford Explorer to the Jim Creek area in the Mat-Su Valley. RANES later met SHINE in that area to burn the 2004 Ford Explorer and conceal evidence of Cody's murder. SHINE then drove to Fairbanks while RANES returned to Anchorage.

Plea Agreement, p. 6.

The investigation has revealed that Shine was never paid the $900,000 he was promised in connection with Cody's murder. He received money on occasion from Ranes, as well as gifts, but nowhere near the amount originally promised. According to interviews conducted throughout the investigation, Shine went into a downward spiral after Cody's death. He admitted the murder to his girlfriend when drunk, justifying it by stating that "he was threatening Tom and his family." According to those that knew him, Shine also abused controlled substances and rarely worked after Cody's death.

Shine was arrested on April 22, 2006, after he drove by the Ranes and Shine shop during the execution of a federal search warrant there. He was interviewed by investigators and admitted to his role in the marijuana conspiracy. At the time, investigators had no idea that Shine had a darker secret which he held inside until June 2007, over two years after Cody's murder.

## II. THE PLEA AGREEMENT

The defendant pled guilty to count 1 (conspiracy to import marijuana) of the Second Superseding Indictment, as well as to an information charging him with using a firearm to commit murder during and in relation to a drug trafficking crime.

## III. APPLICATION OF 18 U.S.C. § 3553(a)

Application of the factors set forth in 18 U.S.C. § 3553(a) supports the imposition at the low end of the guideline range.  Unlike Ranes, the defendant has demonstrated remorse for his crimes, and has fully accepted responsibility for them in his plea agreement.  Before the defendant was implicated in he murder of Cody, counsel had been negotiating a plea agreement that could have resulted in a five-year sentence, given Shine's largely insignificant role in the marijuana conspiracy.  It also should be noted that the defendant's admission finally put to rest any doubts that Cody was still alive and enjoying his millions somewhere. Until the defendant's admissions, Cody's family still wondered if he would some day return.

While the defendant may have had altruistic motives in admitting to his crime, the seriousness of his crime cannot be overstated.  While he was conned by a skilled manipulator, he ultimately was motivated by his own greed.  The

defendant has very little criminal record, and signs indicate that this was an act of aberration. Nevertheless, given the circumstances surrounding the defendant's conduct, both mitigating and aggravating, the United States submits that a 292 month sentence is appropriate. Thereafter, the defendant likely will be deported to Thailand, where he lived as a boy and a place where he has no friends or relatives. Nevertheless, five years of supervised release is mandatory.

RESPECTFULLY SUBMITTED this  24th  day of June, 2008 in Anchorage, Alaska.

NELSON P. COHEN
United States Attorney

s/ Frank V. Russo
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Room 253
Anchorage, Alaska  99513-7567
(907) 271-5071
(907) 271-1500 (fax)
Frank.Russo@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing was sent to the following counsel of record on June 24, 2008, via:

(X) Electronic case filing notice

Michael Dieni, Esq..

Executed at Anchorage, Alaska, June 24, 2008.

s/Frank V. Russo
Office of the U.S. Attorney